IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>DNIB UNWIND, INC.<br>(f/k/a BIND THERAPEUTICS, INC.),[1]<br><br>    Post-Effective Date Debtor. | Chapter 11<br><br>Case No. 16-11084 (BLS) |
| B.E. CAPITAL MANAGEMENT FUND LP, on behalf of itself and all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>GEOFFREY L. BERMAN, in his capacity as Trustee of the Liquidating Trust of DNIB Unwind, Inc. (f/k/a Bind Therapeutics, Inc.),<br><br>    Defendant. | Adv. Proc. No. 17-_____ (BLS) |

## COMPLAINT

Plaintiff B.E. Capital Management Fund LP, on behalf of itself and a class of all other similarly situated persons, by and through its undersigned counsel, pursuant to 28 U.S.C. §§ 2201 and 2202, 11 U.S.C. § 105, and Rules 7001(7) and 7065 of the Federal Rules of Bankruptcy Procedure, hereby files this Verified Complaint for injunctive and declaratory relief against Geoffrey L. Berman, in his Capacity as Trustee of the Liquidating Trust of DNIB Unwind, Inc. (f/k/a Bind Therapeutics, Inc.)  (the "Trustee") alleging as follows:

---

[1] The Post-Effective Date Debtor's address is c/o Development Specialists, Inc., 333 South Grand Avenue, Suite 4070, Los Angeles, California 90071.  The last four digits of its Federal tax ID number are 6148.

## NATURE OF THE ACTION

1. This adversary proceeding arises out of the Trustee's purported attempt to condition future distributions under the Plan[2] on receipt of DNIB stock Distribution Record Date shareholders' W-9 and Equity Distribution Forms. The Trustee's self-imposed deadline (the "Distribution Cut-Off") for submitting those Forms—August 7, 2017—is fast approaching. The very legality of conditioning future distributions on receipt of those forms has been challenged and is the subject of a pending appeal.

2. B.E. Capital therefore is compelled to seek injunctive relief from this Court to prevent distributions from being made upon expiration of the Distribution Cut-Off while the propriety of the Trustee's demands and proposed distribution mechanism are under judicial review. As it presently stands, the Trustee's authority in this regard is far from certain, and injunctive relief must issue to prevent irreparable harm to DNIB shareholders entitled to their pro-rata share of distributions under the Plan. The Trustee has advised this Court he will not make future distributions through the Debtor's transfer agent—in violation of the Plan, Confirmation Order, and Trust Agreement—and that he will not make any distribution to Distribution Record Date shareholders unless they turn in certain information not contemplated by the Plan by the Distribution Cut-Off. If the Trustee gets his way, it will set bad precedent by putting into question the finality of confirmed plans and also will result in a distribution disaster of epic proportions. Injunctive relief must issue to prevent these scenarios from materializing.

---

[2] Capitalized terms used herein but not otherwise defined shall take the meanings ascribed to them in the *Motion for Determination that the Trustee's Conditioning of Distributions to Shareholders on their Submission of Equity Distribution Form Violates the Plan, or Alternatively, is an Impermissible Plan Modification* [D.I. 615]. The filing of the Motion created the "Contested Matter."

## THE PARTIES

3. Plaintiff is a Delaware limited partnership headquartered in New York. Plaintiff purchased 105,000 shares between July 26, 2016 and July 27, 2017 which it held through October 11. Plaintiff also purchased additional shares on and after September 1, 2016 which it held through October 11. Plaintiff did not sell any shares from and after July 26.

4. Geoffrey L. Berman is the Court-appointed Trustee of the Liquidating Trust of DNIB Unwind, Inc. (f/k/a Bind Therapeutics, Inc.), chapter 11 bankruptcy cases filed and pending in this Court.

## JURISDICTION

5. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(a) and 1334(b). This adversary proceeding is governed by Part VII of the Federal Rules of Bankruptcy Procedure and is brought pursuant to 11 U.S.C. § 105.

6. Pursuant to Rule 7008-1 of the Local Rules of Bankruptcy Practice and Procedure for the United States Bankruptcy Court for the District of Delaware, Defendant states it does not consent to the entry of final orders or judgments by the Court if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## STATEMENT OF FACTS

7. On February 13, 2017, the Trustee charged with winding up the Debtors' estates in accordance with the Plan and Confirmation Order announced by way of Certificate of Service (the "Shareholder Notice") filed at docket number 590 that no Distribution Record Date shareholder would receive any further Plan distributions unless they and their respective nominees submit a completed W-9 and the Equity Distribution Form to the Trustee. The Shareholder Notice states

that Record Date shareholders who do not return their completed W-9 and Equity Distribution Forms by August 7, 2017 will not receive any further distributions under the Plan.

8. On March 22, 2017, B.E. Capital filed its *Motion for Determination that the Trustee's Conditioning of Distributions to Shareholders on their Submission of Equity Distribution Form Violates the Plan, or Alternatively, is an Impermissible Plan Modification* [D.I. 615] (the "Motion"). The Motion asserts that the Trustee's conditions on future distributions as set forth in the Shareholder Notice the violate the Debtors' confirmed Plan.

9. On April 18, the Trustee filed the *Status Report Regarding Distributions to Holders of DNIB Stock Pursuant to the Debtors' Plan of Liquidation* [D.I. 642] (the "Status Report"). In the Status Report, the Trustee contends, *inter alia*, that he needs the information on the Equity Distribution Form concerning which persons owned shares as of the Distribution Record Date because, if fewer than all holders of shares in street name submit W-9's, he personally will make the next distribution, bypassing the DTC:

> In the event that less than all shareholders complete the required Tax Forms (and thus less than all DNIB shareholders are entitled to future distributions under the Plan), DTC has confirmed to the Trustee that it will not agree to make any future distributions to holders of DNIB stock. As a result, any future distributions to DNIB shareholders would have to be made by the Trust or its agent. Without the information in the Certification Form confirming the identity of each DNIB shareholder holding in street name and the number of shares of DNIB stock that it held as of the Distribution Record Date, the Trust would have no way to make further distributions to DNIB shareholders.

*Id.* ¶ 10.

10. B.E. Capital on a number of occasions sought to find what legal and/or factual changes occurred between the Initial Equity Distribution—in connection with which the Trustee neither requested nor required *any* information from distribution recipients—and any future Plan

distribution that allegedly requires the Trustee to revamp the Plan's distribution mechanism. The Trustee dodged the inquiry, asserting it is not germane either to the Shareholder Notice or Motion.

11. The Trustee has admitted that it is unlikely all shareholders entitled to a distribution under the Plan will return their completed W-9 and Equity Distribution Forms by August 7, 2017, if at all.

12. Therefore, if the Trustee is permitted to condition future Plan distributions on receipt of DNIB stock Distribution Record Date shareholders' W-9 and Equity Distribution Forms by the Distribution Cut-Off, he will likely illegally and in contravention of the Plan cause a substantial number of Distribution Record Date shareholders to forfeit, unknowingly and against their will, future Plan distributions.

13. On July 13, 2017, this Court denied the Motion (the "Order").

14. On July 14, 2017, B.E. Capital appealed the Order to the United States District Court for the District of Delaware. This Complaint ensured.

## COUNT I
## Injunctive Relief Against the Trustee

15. Plaintiff hereby realleges and incorporates all preceding paragraphs as if fully set forth herein.

16. Plaintiff meets all elements for the issuance of a preliminary injunction and temporary restraining order.

> **a. Absent an Injunction, DNIB Distribution Record Date Shareholders Such as B.E. Capital Will Suffer Irreparable Harm**

17. If the Trustee is permitted to condition future Plan distributions on receipt of W-9 and Equity Distribution Forms by the Distribution Cut-Off, he will cause a substantial number of

Distribution Record Date shareholders to forfeit, unknowingly and against their will, future Plan distributions to which they legally are entitled. The Trustee has admitted as much.

18. The resulting monetary loss will cause those shareholders irreparable that cannot adequately be compensated after the fact by monetary damages.

19. There is something uniquely threatening about the shareholders' loss of money because, once August 7 has passed and the funds are out of the door, there is no prospect of clawing the distributions back into the estate and distributing them to the rightful recipients should it later be determined that the Trustee's actions were, in fact, in contravention of the Plan documents and the Bankruptcy Code. Just ask the former truck drivers for Jevic Transportation.

### b. There is a Reasonable Likelihood that B.E. Capital will prevail on the Merits in the Contested Matter

20. There is a reasonable likelihood that Plaintiff will prevail on the merits in the Contested Matter. Plaintiff has presented evidence that supports its position, including:

    a) 26 C.F.R. § 1.671–4(a), the subsection which the Trustee is relying upon to condition distributions on submission of a W-9 Form, does not require the Trustee to collect W-9 forms from holders of DNIB stock in street name to satisfy the Trust's tax reporting obligations.

    b) The Trustee has two options permitted by the Internal Revenue Code by which he can comply with his taxing obligations without collecting W-9 Forms from the grantor-beneficiaries.[3]

---

[3] As B.E. Capital previously pointed out, the Trustee can satisfy tax reporting requirements by complying with 26 C.F.R. § 1.671-4(b)(3), an optional reporting method expressly permitted by 26 C.F.R. § 1.671-4(a) for trusts treated as owned by two or more grantor-beneficiaries. Alternatively, he can satisfy tax reporting requirements under 26 C.F.R. § 1.671-4(a) by relying on the Form W-9 provided by the Debtor's transfer agent, as other liquidating trusts do and have done. Neither reporting method requires the collection of Form W-9s from trust beneficiaries.

  c)  Other liquidating grantor trusts that are structured in a manner virtually identical to the DNIB Trust do not require W-9 forms to satisfy their tax reporting obligations.

  d)  The accountant who is providing the Trustee with tax advice is not a tax accountant.

  e)  There was no change in tax law between when the Trustee made the Initial Equity Distribution, which occurred without the Trustee collecting W-9 Forms, and the anticipated Plan distribution, which the Trustee contends requires them.

21. The Order does not diminish the reasonable likelihood of B.E. Capital ultimately prevailing on the merits in the Contested Matter. The Order is on appeal, and there is a reasonable likelihood that the appellate courts may differ with this Court's holding. The Order, among other things,

  a)  Fails to address how the Trustee's proposed manual distribution mechanism does not violate the Plan which *requires* that distributions to beneficial interest holders be made through the Debtor's transfer agent. The Trustee is not permitted to make a "judgment" call as to the "mechanics of Trust distributions."[4] The distribution mechanics are prescribed by the Plan, Confirmation Order, and Trust Agreement.

  b)  Fails to address how the Trustee's disparate treatment of members of the same class of creditors does not violate the Bankruptcy Code.

---

[4] Order ¶ 8.

c) Fails to address how the Trustee's request for the Equity Distribution Form is "reasonabl[e]"[5] and not an abuse of "discretion"[6] given that B.E. Capital has demonstrated that (a) there are ways for the Trustee to comply with his tax reporting requirements without having to collect the W-9 and Equity Distribution Forms and (b) as a result of the Trustee's demands–which, btw, are wholly arbitrary, given he was able to make the Initial Equity Distribution without them without a problem–a significant number of Distribution Record Date shareholders will be deprived of the distribution to which they are entitled.

d) Misconstrues the factual record presented at the hearing on the Motion. The Order states that the Trustee's demands "impose at most a modest burden on shareholders/beneficiaries."[7] This holding is contrary to the evidence presented at the hearing, where Mr. Braziel, B.E. Capital's managing partner, testified at length about the enormous difficulties a significant number of beneficial interest holders, including himself, encountered in complying with the document requests, the confusion among nominees as to how to complete the Equity Distribution Form, the outright refusal of some nominees to complete that form, and the lack of notice to a substantial number of Distribution Record Date shareholders of

---

[5] Liquidating Trust Agreement, Section 4.1(f).

[6] Order ¶ 8.

[7] Order ¶ 8. This holding also is inconsistent with several letter responses filed on the Court's docket by shareholders sharing the difficulties they encountered with complying with the Trustee's document requests. As counsel for B.E. Capital pointed out to the Court at the hearing, several shareholders had dialed in to attend the hearing telephonically intending to voice their problems with getting their nominees to complete the Equity Distribution Form. The Court declined to hear from them.

8

the Trustee's form requirement. The Trustee himself admitted that it is unlikely all Distribution Record Date shareholders will comply with his form requirement–and surely the reason is not that they don't want their fair share of the distribution. These difficulties and shareholder mass-disenfranchisement hardly constitute a "modest burden."

### c. The Balance of Hardships Tips in B.E. Capital's Favor

22. The balance of hardship completely favors Plaintiff and the putative class.

23. There is no conceivable irreparable harm the Trustee could suffer from being enjoined from enforcing his Distribution Cut-Off or delaying future Plan distributions until the Contested Matter has been decided.

24. The potential hardship to Plaintiff and the putative class, by contrast, is monetarily significant and virtually irreversible.

### d. The Injunction Serves in the Public Interest

25. The injunction is in the public interest because the public interest is served by ensuring that the Bankruptcy Code is enforced. This includes the Bankruptcy Code's requirement that members of the same class of creditors receive the same, not disparate treatment under the Plan.

26. The public interest is served by ensuring that confirmed plans and court orders have the force of law and cannot be modified without seeking relief therefrom for cause. This includes the Plan's and Trust Agreement's requirement that the Trustee make distributions to beneficial interest holders through the Debtor's transfer agent.

## COUNT II
### Declaratory Judgment Pursuant to 28 U.S.C. §§ 2201-2

27. Plaintiff hereby realleges and incorporates all preceding paragraphs as if fully set forth herein.

28. Plaintiff seeks a declaratory judgment pursuant to 28 U.S.C §§ 2201 and 2202 regarding issues of fact and his rights under the Plan.

29. Section X.K of the Plan which provides that "[d]istributions to Holders of … Allowed Equity Interests shall be made … through the transfer agent for BIND Equity Interests."

30. Trustee's proposed distribution to Holders of Allowed Equity Interests without making it through the transfer agent for BIND Equity Interests violates the Plan.

31. The determination of this issue between Plaintiff and Defendant entails an actual controversy in that this controversy involves the rights or other legal relations of the parties with regard to the Plan; the claim of right or other legal interest is asserted against Defendant, who have an interest in contesting the claim; the controversy is between parties whose interests are real and adverse; and the issue involved in the controversy is ripe for judicial determination.

### PRAYER FOR RELIEF

For all the foregoing reasons stated, Plaintiff respectfully requests the entry of an order

    a)    Enjoining the Trustee from conditioning further Plan distributions on receipt of completed W-9 and Equity Distribution Forms until a resolution of the Contested Matter by final, unappealable order;

    b)    Enjoining the Trustee from making any further Plan distributions until a resolution of the Contested Matter by final, unappealable order;

c) Declaring that the Trustee's proposed distribution to Holders of Allowed Equity Interests without making it through the transfer agent for BIND Equity Interests violates the Plan;

d) Awarding Plaintiff costs and fees associated with bringing this action; and

e) Granting Plaintiff such other and further relief as is just and proper under the circumstances.

Respectfully submitted,

Dated: June 14, 2017
Wilmington, Delaware

KLEIN LLC

*/s/ Julia Klein*
Julia B. Klein (DE 5198)
919 North Market Street
Suite 600
Wilmington, Delaware 19801
(302) 438-0456
klein@kleinllc.com

*Counsel for B.E. Capital Management Fund LP and the Putative Class*